IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS B. KULISH,

*On behalf of himself and on behalf of all
other similarly situated employees,*

    *Plaintiffs*,

    v.

RITE AID CORPORATION and ECKERD
CORPORATION, d/b/a RITE AID, *et al.*,

    *Defendants.*

Civil Action No. ELH-11-3178

## MEMORANDUM OPINION

Thomas B. Kulish, Olufemi Kolawole, and Christiana Dike, plaintiffs, on behalf of themselves and all other similarly situated employees, filed suit against defendants Rite Aid Corporation and Eckerd Corporation, d/b/a Rite Aid, and Rite Aid of Maryland, Inc. (collectively "Rite Aid"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, *et seq.*, and the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. § 3-401, *et seq.* (2008 Repl. Vol. & 2012 Supp.).[1] Plaintiffs complain that defendants failed to compensate them and other pharmacists for overtime, as required by federal and Maryland law.[2]

---

[1] Kulish filed a Class Action Complaint in the Circuit Court for Baltimore City (ECF 2), which was removed to this Court under 28 U.S.C. § 1441(a). The Second Amended Class Action Complaint ("SAC"), filed on December 23, 2011 (ECF 23), is the operative pleading. Jurisdiction is founded on 28 U.S.C. § 1331, with supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

[2] Pursuant to an Order of January 26, 2012 (ECF 31), the parties engaged in limited discovery for "exploration of the merits of the claims of the three named plaintiffs." *See* ECF 38.

As discussed, *infra*, the FLSA generally requires employers to pay overtime to non-exempt employees who work in excess of forty hours per week, at a rate of at least time and a half. 29 U.S.C. § 207(a)(1). Certain employees, however, are exempt from the overtime requirement. *See* 29 U.S.C. § 213(a)(1). This case presents the question of whether pharmacists who are salaried professionals, and thus "exempt" under 29 U.S.C. § 213(a)(1), lose their exempt status because the employer permits unpaid leave, but requires it to be taken only in increments of full days.[3]

Rite Aid has moved for summary judgment ("Motion" or "MSJ") (ECF 39), contending that plaintiffs are salaried professionals, and Rite Aid made no improper deductions from plaintiffs' salaries so as to disqualify them from "exempt" status under the FLSA. In plaintiffs' Response in Opposition to the Motion ("Opposition" or "Opp.") (ECF 42), they argue that Rite Aid's unpaid leave policy precluded designation of its pharmacists as exempt. Plaintiffs also raise several issues related to discovery. *See id.* at 6-8. The Motion is ripe for decision,[4] and no hearing is necessary to resolve the dispute. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion.

---

[3] The MWHA's exemption for salaried professionals generally mirrors that of the FLSA. *See* COMAR 09.12.41.17 ("Professional capacity has the meaning stated in 29 C.F.R. § 541.300, *et seq.*"). However, the FLSA provides for a two-year statute of limitations from accrual of the action, extended to three years for "willful" violations, 29 U.S.C. § 255(a), whereas the Maryland Code provides for a generally applicable three-year statute of limitations, unless otherwise provided by a specific Code section. *See* Md. Code., Cts. & Jud. Proc. § 5-101 (2006 Repl. Vol & 2012 Supp.). Despite this distinction, I will treat the result under the FLSA as dispositive of both statutory claims. *Turner v. Human Genome Science, Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003).

[4] After Rite Aid filed a Reply (ECF 43), the Court granted plaintiffs' request for leave to file a Surreply ("Kulish Surreply") (ECF 46, ECF 47). The Court also granted Rite Aid leave to file a Surreply ("Rite Aid Surreply") (ECF 49, ECF 50).

**Discovery Disputes**

Before addressing the merits, I will consider plaintiffs' contentions that Rite Aid improperly withheld material during discovery, and then improperly relied upon that information in support of the Motion. *See* Opp. at 6-8. In my view, plaintiffs' contentions as to discovery issues are without merit.[5]

Plaintiffs complain that Rite Aid only provided pay records dating from November 2008, despite plaintiffs' request for records dating from September 15, 2008. *See id.* (citing Rite Aid's Answers to Interrogatories, Opp. Exh. G (ECF 42-9)). They argue that Rite Aid ignored the applicable three-year statute of limitations under Maryland law. *Id.* (citing Md. Code, Cts. & Jud. Proc. § 5-101).

Although the Complaint was filed in September 2011, Rite Aid's discovery disclosures conformed to its interpretation of the three-year statute of limitations. Rite Aid's responses indicate that, because the individual plaintiffs each filed a consent to be named as a plaintiff in this suit in November of 2011, Rite Aid limited its disclosures to November of 2008, based on a three-year limitations period. *See* Opp. Exh. G, at Interrogatory No. 3 ("Defendant objects to this interrogatory insofar as it is overbroad in temporal scope. Plaintiff Kulish filed his consent to become a party plaintiff on November 4, 2011, Plaintiff Kolawole filed his consent on November 16, 2011, and Plaintiff Dike filed her consent on November 22, 2011; therefore, *given that the maximum length of any possible applicable statute of limitations is three years,*

---

[5] Plaintiffs correctly observe that, with respect to an earlier discovery dispute, I indicated: "[I]f the defendants oppose conditional certification on the ground that plaintiffs have not presented the kind of information that plaintiffs sought from defendants during the initial phase of limited discovery, and which defendants failed to provide, the Court will take into account defendants' unwillingness to produce that information." Memorandum to Counsel, Apr. 3, 2012 (ECF 38).

*Defendants will provide responsive information pertaining to each Plaintiff from each of those dates through their respective termination dates.*") (emphasis added); *id.* ¶ 8 ("The relevant time period for Plaintiff Kulish, based on the date of the filing of his consent to become a party plaintiff, is November 1, 2008 until his employment was terminated.  The relevant time period for Plaintiffs Dike and Kolawole, based on the dates of the filing of their consents to become a party plaintiff, is November 15, 2008 until the dates their employment was terminated.").

Plaintiffs do not offer any argument as to why Rite Aid's calculation was erroneous.  In any event, they do not dispute Rite Aid's assertion that "Plaintiffs never indicated . . . that they believed that Defendants' discovery responses were inadequate and Plaintiffs did not seek relief from this Court either during the discovery period or before filing their Response."  Reply at 13.

As the Local Rules make clear, a motion to compel is the appropriate vehicle for resolving certain discovery disputes, including those at issue here.  *See* Local Rule 104.8.  Plaintiffs never filed a motion to compel, however.  Nor have they alleged that they satisfied the meet and confer requirement in Local Rule 104.8(b).  Under the circumstances, the discovery dispute is untimely.  *See Blind Indus. & Servs. of Md. v. Route 40 Paintball Park*, Civ. No. WMN-11-3562, 2012 WL 4470273, at *1-2 (D. Md. Sep. 26, 2012) (finding motion to compel untimely where it would require reopening of discovery); *see also Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (holding that the district court did not abuse its discretion in denying plaintiff's motion to compel as untimely where plaintiff knew of insufficient discovery responses before the discovery deadline but failed to file its motion to compel until after the close of discovery and after defendants had filed their summary judgment motion).

Plaintiffs also contend that Rite Aid did not include certain "paystubs" reflecting the deductions referenced in its Memo, and contained in Rite Aid's Exhibit U to the Motion. *See* Opp. at 7. But, Rite Aid maintains that Exhibit U contains only its payroll data for plaintiff Dike, not the paystubs themselves. *See* Reply at 12-13; Rite Aid Surreply at 4-6. And, Rite Aid has explained that the caption at the top of each page of Exhibit U, which reads "*Kulish v. Rite Aid*," was added by the analyst who produced the payroll data; contrary to plaintiffs' suggestion, this does not indicate that the information was fabricated for purposes of this litigation. *See* Rite Aid Surreply at 4-6.

Moreover, it appears that, at least as early as May 15, 2012, the date of the deposition of Jocelyn Konrad, plaintiffs were in possession of the contents of this exhibit. During the Konrad deposition, contents of this exhibit were, in fact, explored by plaintiffs, thereby allowing ample time to raise any concerns as to the material prior to the briefing of the Motion. *See* Reply at 13; Rite Aid Surreply at 4-6.

In sum, plaintiffs' arguments as to alleged discovery violations are without merit.

### Factual Background

Rite Aid, a national retail drugstore chain, operates thousands of pharmacy locations around the country, including locations in Maryland.[6] Rite Aid employs two kinds of pharmacists: those it compensates based on an annual salary figure, and those it employs on an

---

[6] Defendants contend that Rite Aid of Maryland, Inc. is the proper defendant to this suit, as plaintiffs' employer, and that Rite Aid Corporation and Eckerd Corporation were improperly named as defendants. *See* Motion at 1 n.1. Eckerd Corporation is alleged to be a subsidiary of Rite Aid, and the Second Amended Complaint alleges that Rite Aid and Rite Aid of Maryland, Inc. are jointly liable under the FLSA and MWHA based on a "joint employer," "single employer," or "joint venture" theory, because of common ownership, common control, and centralized management. *See* SAC ¶¶ 12-35. Defendants do not address these allegations in their Motion. In any event, based upon my resolution of the Motion, the issue is moot.

as-needed basis, to whom it pays an hourly wage.  *See* Deposition of Jocelyn Konrad ("Konrad Depo."), Def. MSJ Exh. E, at 15:6-10 (ECF 39-7).  Generally, Rite Aid staffs each pharmacy location in Maryland with two salaried pharmacists, designated and treated by Rite Aid as "exempt" under the FLSA in written notifications, pay stubs, and other documents: a "Pharmacy Manager" and a "Staff Pharmacist."

Kulish, Kolawole, and Dike have all been employed as pharmacists at Rite Aid locations in Maryland.  Most recently, Kulish and Kolawole each worked as a "Pharmacy Manager," and Dike worked as a "Staff Pharmacist."  Deposition of Kulish ("Kulish Depo."), Pl. Opp. Exh. A, at 15:14-16 (ECF 42-3); Deposition of Kolawole ("Kolawole Depo."), Pl. Opp. Exh. B, at 12:8-9 (ECF 42-4); Deposition of Dike ("Dike Depo."), Pl. Opp. Exh. C, at 36:21-37:1 (ECF 42-5).  At the time their employment was terminated,[7] each plaintiff had been employed by Rite Aid for over ten years, with Kulish having spent approximately 39 years in Rite Aid's employ.  Pl. Opp. Exh. F (ECF 42-8).

The pharmacies at which plaintiffs worked were open for 154 hours every two-week "pay period," from 9 a.m. to 9 p.m. on weekdays, from 9 a.m. to 6 p.m. on Saturdays, and from 10 a.m. to 6 p.m. on Sundays.  Kulish Depo., Def. MSJ Exh. A, at 16:4-6 (ECF 39-3); Dike Depo., Def. MSJ Exh. B, at 41:7-42:4 (ECF 39-4); Kolawole Depo., Def. MSJ Exh. C, at 13:10-14:4 (ECF 39-5).  Rite Aid scheduled its pharmacists to work a base of 77 hours during each two-week pay period.  Kulish Depo. at 66:15-67:4; Dike Depo. at 92:12-20.  On any given day, however, Rite Aid assigned only one pharmacist to work a full shift (*i.e.*, from open until close) at each pharmacy location.  Kulish Depo. at 16:16-17:4, 65:17-67:22; Dike Depo. at 42:14-19,

---

[7] Termination of plaintiffs' employment is not an issue in this case.

44:11-15; Kolawole Depo. at 14:5-16, 69:16-70:8.  Consequently, plaintiffs and their pharmacist colleagues would split all of the full-day shifts throughout the pay period, so that each pharmacist assigned to the store regularly worked 77 hours every two weeks.  Kulish Depo. at 16:16-17:4, 65:17-67:22; Dike Depo. at 42:14-19, 44:11-15; Kolawole Depo. at 14:5-16, 69:16-70:8; Declaration of Jocelyn Konrad ("Konrad Decl."), Def. MSJ Exh. F, ¶ 6 (ECF 39-8).  In addition, plaintiffs' responsibilities occasionally required them to work outside of their normal shift hours, to take inventory, to provide customer assistance, to participate in conference calls with supervisors or management, to attend performance reviews, and to conduct public outreach.  *See* Kulish Depo. at 40:2-6, 50:2-3, 54:9-22, 60:2-10; Dike Depo. at 42:6-13; Kolawole Depo. at 59:12-60:5; Rite Aid Job Description, Def. MSJ Exh. D (ECF 39-6); Konrad Depo. at 46:11-47:22, 166:7-23.

Rite Aid offers its salaried pharmacists a "guaranteed" annual salary, payable in 26 bi-weekly pay periods.  As Pharmacy Managers, Kulish and Kolawole received an annual salary of $119,119, or $4,581.50 for each biweekly period.  Konrad Decl. ¶ 4; Def. MSJ Exh. G (Kulish Payroll Records); Def. MSJ Exh. H (Kolawole Payroll Records).  As a Staff Pharmacist, Dike received an annual salary of $113,613.50, or $4,369.75 for each biweekly pay period.  Konrad Decl. at ¶ 4; Def. MSJ Exh. I (Dike Payroll Records).  For accounting purposes, Rite Aid assigns each pharmacist an equivalent hourly rate based on their annual salary, which is used to calculate any overtime worked by a pharmacist, such as when a pharmacist fills in for a sick employee.  Konrad Depo. at 14:10-15:5, 27:2-10; Konrad Decl. ¶¶ 6, 8-9.  Thus, plaintiffs' "paystubs" would reflect the hours worked and an amount representing their hourly rate.  Konrad Decl. ¶ 13; Plaintiffs' Paystubs, Def. MSJ Exh. M (ECF 39-15).

Rite Aid is prohibited from operating its pharmacies unless a licensed pharmacist is physically present in the store.[8]  Konrad Decl. ¶ 7 ("Rite Aid cannot legally open a pharmacy unless a registered pharmacist is in the building; therefore, when a pharmacist is unable to work an assigned shift, is late for an assigned shift, or must leave early, another pharmacist must cover that absence or the pharmacy cannot operate."); Kolawole Depo. at 20:14-16 (confirming that if no pharmacists are in the store, "[n]o one goes into the pharmacy"); *see also* Md. Code, Health Occ. § 12-301 (2009 Repl. Vol. & 2012 Supp.) (requiring that an individual be licensed by the State Board of Pharmacy in order to practice pharmacy in Maryland); *id.* § 12-313 (prohibiting delegation of "pharmacy acts" to unauthorized individuals); *id.* § 401, *et seq.* (requiring that a person hold a pharmacy permit issued by the State Board of Pharmacy to operate a pharmacy in Maryland).  If a pharmacist is unable to work, other pharmacists can cover the absent pharmacist's shift in exchange for bonus compensation, *see* Konrad Decl. ¶¶ 8-10, or the pharmacists can trade shifts, *see* Konrad Depo. at 38:7-16.  Additionally, Rite Aid will arrange to cover the absence of a pharmacist arriving late to work, either with a temporary replacement pharmacist or with a supervisor.  *See id.* at 37:10-38:16, 105:2-23.

No deductions are made to a pharmacist's biweekly salary for arriving late to a shift, whether for personal reasons or because of traffic or other problems.  Kulish Depo. at 90:12-91:3; Konrad Depo. at 104:20-105:8.  Nor is a pharmacist's salary reduced as a result of store closures due to inclement weather, emergencies, breaks during shifts, illness, or personal or family emergencies.  Kulish Depo. at 93:7-94:4; Dike Depo. at 167:18-168:9; Konrad Depo. at 113:11-19, 121:15-122:4; Konrad Decl. ¶ 5 (explaining that sick leave also functions as a "catch

---

[8] Plaintiffs have not disputed this point.

all for any other contingency that might arise that requires a pharmacist to be absent during a shift, such as personal or family emergency").  And, as a general rule, for pay periods during which a pharmacist does not work the full 77-hour base, Rite Aid uses a "bump to base" system to ensure payment of the base salary level.  *See* Konrad Depo. at 113:10-19, 138:17-24; Rite Aid Payroll Presentation, Def. MSJ Exh. O, at Rite Aid 292 (ECF 39-17).  The "bump to base" system is automatic, and is applied without regard to the reason for which a pharmacist does not meet the base schedule.  Konrad Decl. ¶¶ 12-13; Payroll Presentation at Rite Aid 295.  Thus, even where a pharmacist misses part of a shift or arrives late to work, the "bump to base" system ensures payment of a pharmacist's base salary for that pay period.

In addition to sick leave, *see* Konrad Decl. ¶ 5 (discussing use of sick leave), and paid leave, *see* Konrad Depo. at 29:1-20 (discussing paid leave), Rite Aid offers unpaid personal leave time ("unpaid leave").  Konrad Depo. at 23:3-24:2; Unpaid Leave Forms, Def. MSJ Exh. P (ECF 39-18).  Unpaid leave may be used by a pharmacist who has exhausted accrued paid leave, such as when a pharmacist from overseas needs an extended period of time to travel home, and does not have sufficient paid leave to cover the length of the trip.  Konrad Depo. at 23:3-24:2, 58:16-60:22.

Of import here, unpaid leave is offered only in full-day increments, even if an employee only needs a few hours of leave.  Konrad Depo. at 36:22-37:9, 58:16-60:22; *see* Unpaid Leave Forms.  As Rite Aid's corporate designee stated, "any unpaid time-off has to be a full shift."  Konrad Depo. at 36:19-20.  And, a pharmacist using a full day of unpaid leave will incur a full day's deduction from pay.  *Id*. at 40:24-41:5.  When a pharmacist takes unpaid leave, the payroll system reduces the pharmacist's gross pay in an amount proportional to the hours not worked

during the pay period.  Konrad Decl. ¶ 15.  In that circumstance, the "bump to base" feature does not compensate for hours missed due to unpaid leave.  *See* Konrad Depo. at 35:23-24.  Thus, a full day of unpaid leave is reflected by a deduction for a full-day shift, calculated at the pharmacist's hourly rate.

At several points during their tenure as Rite Aid pharmacists, each of the plaintiffs experienced reductions in their bi-weekly paychecks to below their base salary level.  It is undisputed that deductions for unpaid leave were made from Kolawole's bi-weekly paycheck on three occasions and from Dike's paycheck on one occasion, after each had exhausted paid leave, but took time off.  *See* Memo at 14-15; Opp. at 13.  Although the record does not reflect that Kulish's salary was ever reduced to below the 77-hour base for unpaid leave, he was likewise paid for less than 77 hours of work in one paycheck.  *See* Opp. Exh. E (Kulish paystub of June 3, 2010, reflecting payment for 65 hours of work).

### Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. There is a dispute of material fact that precludes summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In their Opposition, ECF 42-1 at 1, plaintiffs state:

> Rite Aid's Motion begins by describing this case as one that 'presents a straight forward question of law.' Plaintiffs concur to the extent that this case revolves around narrow, uncomplicated issues surrounding the basic practice of compensating an employee who is paid on a salary basis.

Nevertheless, plaintiffs suggest that "numerous issues of fact exist, and, as such, Defendants' Motion must be denied as a matter of law." *Id.* Plaintiffs justify their position on the ground that "Rite Aid . . . concedes that it makes full-day deductions from its salaried pharmacists' compensation in instances when those pharmacists have exhausted their paid time off, even if those pharmacists only need part of a day off. . . . Accordingly, fact issues exist, and Rite Aid's Motion must fail." *Id.* at 14.

However, Rite Aid does not dispute any material facts concerning the unpaid leave policy. Therefore, in view of plaintiffs' arguments and the factual basis thereof, and as explained more fully *infra*, I agree with the defense, which asserts: "Although Plaintiffs repeatedly state in

their brief that some unidentified factual dispute exists, there are no facts in dispute about Rite Aid's unpaid time off policy . . . ."  Reply at 2.[9]

### Discussion

Under the FLSA, an employer who employs a person for more than forty hours per workweek must pay overtime compensation of at least one-and-a-half times the regular hourly rate.  *See* 29 U.S.C. § 207(a)(2).  However, the FLSA exempts from this requirement any individual "employed in a bona fide executive, administrative, or professional capacity."  *Id.* § 213(a)(1).  Regulations promulgated by the Department of Labor ("DOL"), the federal agency charged with administering the FLSA, *see id.*, provide that an employee falls within the "professional capacity" exemption, commonly known as the "white collar exemption," when the employee is paid on a "salary basis" and the employee's job functions satisfy the standard for professional duties.  *See* 29 C.F.R. § 541.300(a).  The employer bears the burden of proof in establishing application of an exemption.  *Clark v. J.M. Benson Co.*, 789 F.2d 282, 286 (4th Cir. 1986).

The parties do not dispute that the nature of plaintiffs' job responsibilities as pharmacists meets the applicable standard for the white collar exemption.  The regulations define the standard for professional duties as work "[r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or . . . [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."  29 C.F.R. § 541.300(a)(2).  Other courts have found that pharmacists working in capacities similar to that of plaintiffs satisfy the standard for professional

---

[9] In their Surreply, plaintiffs purport to identify a factual dispute with regard to the terms of the unpaid leave policy.  As discussed, *infra*, the dispute is illusory.  *See* note 12, *infra*.

duties.  *See, e.g.*, *De Jesus-Rentas v. Baxter Pharmacy Serv. Corp.*, 400 F.3d 72, 74-77 (1st Cir. 2005) (holding that pharmacists exercised discretion and judgment, and therefore qualified for FLSA exemption for salaried professionals).

But, the parties dispute whether Rite Aid's compensation structure for plaintiffs satisfies the salary basis test, as required by 29 C.F.R. § 541.300(a)(1).  *See* SAC ¶ 53 ("The Class was employed in a profession which is typically recognized as falling within the professional exemption to the MWHL and FLSA.  However, since Rite Aid elected to compensate the Class on an hourly-basis, as opposed to a salary-basis, the exemption is not applicable to them."); Memo at 19 (confirming, based on statements of plaintiffs' counsel at deposition, that "salary basis" test is the sole issue in this case).

A. <u>The Salary Basis Test</u>

The salary basis test is meant "to distinguish 'true' executive, administrative, or professional employees from non-exempt employees, *i.e.*, employees who may be disciplined by 'piecemeal deductions from . . . pay.'"  *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir. 2000) (quoting *Auer v. Robbins*, 519 U.S. 452, 456 (1997)).  The salary requirement is premised on the notion that such employees "have discretion to manage their time" and "are not paid by the hour or task, but for the general value of services performed."  *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122-01, at \*22177 (Dep't of Labor Apr. 23, 2004) (Final Rule, codified at 29 C.F.R. pt. 541) (citing *Kinney v. District of Columbia*, 994 F.2d 6, 11 (D.C. Cir. 1993); *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 184 (3d Cir. 1988)).  In other words, payment on a

salary basis is a "mark of [the] status of an exempt employee." *Id.* (brackets in original) (quotation omitted).

DOL regulations, 29 C.F.R. § 541.602(a), provide, as a "[g]eneral rule," as follows:

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed.  Subject to the exceptions provided in paragraph (b) of this section, an employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.  Exempt employees need not be paid for any workweek in which they perform no work.  An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business.  If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

Paragraph (b) delineates specific exceptions to the "prohibition against deductions from pay in the salary basis requirement," including that "[d]eductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability."  29 C.F.R. § 541.602(b)(1).  The regulation provides the following example, *id.*:

> [I]f an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences.  However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

The evidence shows, and plaintiffs do not dispute, that Rite Aid pharmacists "regularly receive[] each pay period . . . a predetermined amount constituting all or part of the employee's compensation . . . not subject to reduction because of variations in the quality or quantity of work

performed."[10]  29 C.F.R. § 541.602(a).  Except for a few isolated instances, for every two-week

pay period, Rite Aid paid its salaried pharmacists who worked their scheduled shifts a pro-rated

amount of their annual salary.  *See* DOL Wage & Hour Opinion Letter, 2006 WL 940662 (March

10, 2006) ("As the preamble to the final rule explains, an employer may require an exempt

employee to do things such as to record and track hours and to work a specified schedule without

affecting the employee's exempt status.").  As indicated, through the "bump to base" system,

Rite Aid did not make any deductions for late arrivals, breaks, or parts of a missed shift, thereby

ensuring that the pharmacists' guaranteed salary was not subject to weekly fluctuations or

otherwise the "functional equivalent of an hourly wage."  *See In re Wal-mart Stores, Inc., Fair*

*Labor Standards Act Litig.*, 395 F.3d 1177, 1181 (10th Cir. 2005); *Koelker v. Mayor & City*

*Counsel of Cumberland*, 599 F. Supp. 2d 624, 628 (D. Md. 2009) (finding salary basis test

satisfied where firefighters were paid 1/26th of their salary every two weeks, "regardless of the

number of hours they are scheduled to work or in fact work . . .").

In this case, pharmacists who worked extra shifts were paid an hourly rate based on their

annual salary.  Such a straight-time method is expressly approved by DOL regulations, and does

---

[10] In their Opposition, ECF 42-1 at 2-4, and Surreply, ECF 47 at 2, plaintiffs take issue with defendants' dedication of a substantial part of the Motion towards refuting the allegations in the Second Amended Complaint that payment of overtime on an hourly basis and the demarcation of an hourly rate on pay stubs precluded exempt status for Rite Aid pharmacists. *See* SAC ¶¶ 42-45.  Plaintiffs suggest that the complex fact section and numerous exhibits in Rite Aid's Motion demonstrate a "convoluted pay scheme" meant to "clandestinely trim the wages of Rite Aid's pharmacists."  Opp. at 4.  However, as noted, the employer bears the burden of proof under the FLSA in establishing that an exemption applies.  *See Clark*, 789 F.2d at 286.  So far as this Court is able to discern, the Second Amended Complaint made no explicit reference to Rite Aid's unpaid leave policy.  Consequently, it is understandable that defendants addressed all of the factual bases alleged in the SAC, asserted in support of plaintiffs' claim that they did not qualify as exempt under the salary basis test.

not defeat satisfaction of the salary basis test.  In particular, 29 C.F.R. § 541.604(a) states: "An employer may provide an employee with additional compensation without losing the exemption or violating the salary basis requirement . . . .  Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half, or any other basis) . . . ."  *See, e.g.*, *Annai v. CVS Rx Servs., Inc.*, 788 F. Supp. 2d 55, 64, 70 (E.D.N.Y. 2011) (finding that supplemental pay based on hours worked and "straight-time hourly amount" did not violate salary basis test).

Plaintiffs did not contest Rite Aid's arguments concerning these practices.  In effect, plaintiffs have abandoned a challenge to them.  *See Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim); *Matsushida*, 475 U.S. at 587 (holding that, to survive a motion for summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial").  Rather, plaintiffs argue that "Rite Aid violated the terms of the FLSA by: (1) forcing employees to take unpaid time off, . . . and (2) impermissibly reducing employee salaries."  Opp. at 2.

According to plaintiffs, Rite Aid engaged in an "illegal pay scheme" through the use of its unpaid leave policy, *id.* at 3, to avoid paying a full day's salary to an employee who needs only a few hours of unpaid leave.  *Id.* at 4.  Plaintiffs maintain that these employees are deprived of "the option of working the remainder of the day in order to earn the wages they would otherwise be entitled to receive."  *Id.*  Because pharmacists may only take full days of unpaid leave, plaintiffs contend that, insofar as the policy mandates absences longer than desired by an employee who wants to use less than a full day of unpaid leave, such absences are "occasioned

by the employer or by the operating requirements of the business," and therefore constitute de facto deductions for absences of less than a full day of work. *See id.* at 11-14; Kulish Surreply at 6-7. Plaintiffs insist that Rite Aid's policy of requiring pharmacists to take unpaid leave in full-day increments disqualifies those pharmacists from exempt status under the FSLA.

   B. Rite Aid's Unpaid Leave Policy

   In considering plaintiffs' position, I am mindful that, under DOL regulations, either an actual practice of making improper deductions or a firmly established policy subjecting employee salaries to such deductions can disqualify those employees from exempt status. *See* 29 C.F.R. § 541.603; *Auer*, 519 U.S. at 461-62. For the purpose of this case, however, the record does not reflect any instances in which plaintiffs were docked for a full day of unpaid leave, despite a desire to take time off from work for less than a full day. Therefore, only the clearly established terms of the policy are at issue.[11] Furthermore, because the terms of Rite Aid's unpaid leave policy are not in dispute, the issue presented is a pure question of law, appropriate for resolution by summary judgment.[12]

---

[11] Although Kolawole's salary was reduced for unpaid leave on three occasions, and Dike's salary was likewise reduced for unpaid leave on one occasion, in none of these instances did plaintiffs indicate that they sought less than a full day. *See* Opp. at 13. However, all three plaintiffs have submitted sworn affidavits stating that they opted *not* to take a full day off in instances where they only needed a few hours. *See* Affidavit of Christiana Dike ¶¶ 6-7 (ECF 42-13); Affidavit of Olufemi Kolawole ¶¶ 6-7 (ECF 42-14); Affidavit of Thomas B. Kulish ¶¶ 6-7 (ECF 42-15). Thus, plaintiffs could be "subject to" an improper deduction under a clearly established policy. *See Auer*, 519 U.S. at 461-62.

[12] To suggest a factual dispute, plaintiffs cite to a portion of Konrad's deposition regarding a hypothetical employee who would like time off to fix his or her car. Kulish Surreply at 4. Plaintiffs cite the following excerpt from Konrad's deposition, at 36:22-37:9:

   **Question**: So, if, in my example, an employee needed three hours to fix their car, they call in the morning, their [Pharmacy District Manager] would say, you need to take the day off?

As explained more fully below, I am not persuaded by plaintiffs' arguments. First, a pharmacist's decision to use unpaid leave is not "occasioned by" Rite Aid, under the plain language of the regulation or its purpose, as illustrated by DOL opinion letters. Second, a deduction for a full-day absence is expressly permitted by the governing regulations. Indeed, plaintiffs' interpretation might lead employers not to offer any unpaid leave to exempt salaried professionals.

1. *Voluntary absences for unpaid leave are not occasioned by the employer or operating requirements of the business.*

As indicated, FLSA generally requires employers to pay overtime to employees who work more than forty hours per week. 29 U.S.C. § 207(a)(1). Under 29 C.F.R. § 541.602(a),

---

**Konrad**: I don't know what—I can't speak for all [Pharmacy District Managers].

**Question**: What is the policy? You are here to talk on behalf of Rite Aid policy.

**Konrad**: Right.

**Question**: I thought you said the policy was you can't take a few hours off, you have to take the shift?

**Konrad**: That's correct.

But, the excerpt identified by plaintiffs merely indicates, as Rite Aid concedes, that unpaid leave is only offered in full-day increments. Nor does the excerpt contradict Konrad's subsequent deposition testimony that the employee may take either a full day of unpaid leave or choose another option, such as switching shifts with other pharmacists. *See* Konrad Depo. at 37:10-38:16 (stating that the Pharmacist District Manager "may go into the store and work until that pharmacist gets there. And that pharmacist would be paid."); *id.* at 38:7-38:16. ("They can do many different things. They can switch with their partner, if they choose to, and change their hours so they can have some time off."); *id.* at 105:9-23 ("If they said, oh, I didn't know I was working, I'll get out there in an hour or two, I would say, okay, get there as soon as you can. And they would get paid."). In my view, the alleged "dispute" of facts is not a material dispute, and is insufficient to preclude judgment as a matter of law. *See, e.g.*, *Lawrence v. IMAGINE*, 333 F. Supp. 2d 379, 385 n.7 (D. Md. 2004) (observing that "[p]laintiffs' characterizations of testimony are insufficient to create a genuine issue of material fact for summary judgment purposes," and collecting cases).

"[a]n employee is not paid on a salary basis," and thus not exempt from overtime, if "deductions from the employee's predetermined compensation are made for absences occasioned by the employer. . . ." The DOL regulations have the effect of law. *See Auer v. Robbins*, 519 U.S. 452, 458 (1997) (stating that FLSA confers broad authority on the Secretary of Labor to define the scope of FLSA exemptions); *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 844 (1984) (recognizing that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. . . .") (footnote omitted).

Plaintiffs maintain that a full-day unpaid leave policy represents an improper deduction for an absence "occasioned by the employer or by the operating requirements of the business," when the employee is otherwise "ready, willing and able to work." 29 C.F.R. § 541.602(a). When, as here, a regulation is unambiguous, the controlling interpretive principle is one that looks to "'the literal plain language of the statute.'" *North Carolina v. Tenn. Valley Auth.*, 515 F.3d 344, 351 (4th Cir. 2008) (quoting *Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007)); *see United States v. Deaton*, 332 F.3d 698, 709 (4th Cir. 2003). Based on that principle of construction, an absence for unpaid leave under Rite Aid's policy is not "occasioned" by the employer or the operating requirements of the employer's business.

A specific statutory term is given "its 'ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import.'" *Tenn. Valley*, 515 F.3d at 351 (quoting *DIRECTV. Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005)). Absent such intent, it is appropriate to look to the term's dictionary definition. *See id.* (using dictionary definition for "common parlance"). The Oxford English Dictionary defines "to occasion" as "to

cause." Oxford English Dictionary (3d ed. 2004; online ed. 2012). Rite Aid does not cause its employees' absences when they take unpaid leave. Rather, as Rite Aid observes, "the use of such leave [i]s optional and occasioned by [the employees'] desire to use a form of leave offered by Rite Aid in order to be absent from work to engage in personal activities when they were out of paid leave." Reply at 8.

Even if there were some ambiguity in the regulatory language, Opinion Letters issued by DOL[13] illustrate that an absence cannot be "occasioned by the employer" or the "operating requirements of the business" when the employee voluntarily opts to take time off from work. The regulatory language is targeted at *employer* decisions that cause the involuntary absence of an employee, and deduct salary for that absence, despite the employee's willingness to work. For example, an absence is "occasioned by the employer or by the operating requirements of the business" when "the employer closes the office due to inclement weather or other disasters for less than a full workweek." DOL Wage & Hour Opinion Letter (Oct. 24, 2005). Thus, as explained by the DOL, "an exempt employee who has no accrued benefits in the leave bank account . . . still must receive the employee's guaranteed salary for any [such] absence(s)." *Id.* Conversely, if the office remains open and the employee fails to report to work due to inclement weather, "an exempt employee who has no accrued benefits in the leave bank account does not

---

[13] DOL opinion letters are not intended to be binding, except to the extent allowed under the Portal-to-Portal Act, 29 U.S.C. § 259 (permitting defense of good faith reliance on opinion letter by an employer within the class treated by the letter); *see Hultgren v. Cnty. of Lancaster, Neb.*, 913 F.2d 498, 507 (8th Cir. 1990), and contain a standard disclaimer that the letter is "based exclusively on the facts and circumstances described" in a request, presumes that the request provides "all [the pertinent] facts and circumstances," and that the "[e]xistence of any other factual or historical background . . . might require a [different] conclusion." Nonetheless, insofar as the opinion letters interpret DOL's own regulations, they are "entitled to great weight." *In re Wal-mart Stores, Inc*, 395 F.3d at 1184-85.

have to be paid (*i.e.*, may be placed on leave without pay) for the full day(s) she fails to report to work." *Id.*

This language also targets schedule changes "designed to circumvent the salary basis requirement." DOL Wage & Hour Opinion Letter (Jan. 15, 2009) (explaining that employer cannot reduce exempt employee's weekly salary when employer wants employees to leave early or not report because of lack of work). Thus, "deductions from salary due to day-to-day or week-to-week determinations of the operating requirements of the business," such as "low patient census," may not be imposed through the use of unpaid "mandatory time off." *Id*. Conversely, an employee's own decision to take "*voluntary* time off" during periods of slow business is *not* "occasioned by the employer," and would therefore be an allowed deduction. *Id.* (emphasis added). Accordingly, "an exempt employee . . . may take [voluntary time off] for personal reasons for four days in a workweek and receive one fifth of the salary." *Id.*

There is no dispute that plaintiffs were given a certain amount of paid leave.[14]  If they arrived late to work, however, they were not obligated to use any leave, paid or unpaid. *See* Konrad Depo. at 38:23-39:1, 105:9-18; Kulish Depo. at 90:12-91:3. Although it is not entirely clear from the record how Rite Aid handled paid leave for an employee who knows in advance that he or she will need to be absent for a considerable portion of a day, the record reflects that employees have the *option* of switching shifts or hours with another pharmacist so as to avoid using any leave, whether paid or unpaid. *See id.* at 38:7-38:16 ("They can do many different things. They can switch with their partner, if they choose to, and change their hours so they can have some time off."), 37:14-16 (The Pharmacist District Manager "may go into the store and

---

[14] To my knowledge, the terms of the paid leave policy are not fully explored in the record; that policy is treated in passing in the parties' briefs.

work until that pharmacist gets there.  And that pharmacist would be paid."), 105:2-23 ("If they said, oh, I didn't know I was working, I'll get out there in an hour or two, I would say, okay, get there as soon as you can.  And they would get paid. . . .  I would ask the [replacement] pharmacist to go in and open the store until the other pharmacist would arrive.").  In other words, in the absence of available paid leave, Rite Aid does not direct an employee to use unpaid leave to cover every absence.  Thus, a Rite Aid employee's decision to take time off from work for personal reasons, without pay, is not "occasioned by the employer," under either the plain meaning of the regulations or the examples discussed by DOL.

To be sure, plaintiffs indicate in their affidavits that a pharmacist might choose not to take time off because unpaid leave is only offered in full-day increments.  But, the fact that plaintiffs choose whether to use unpaid leave supports the proposition that a pharmacist's decision to do so is, ultimately, a voluntary one.[15]  Although Rite Aid's corporate designee stated that the full-day unpaid leave policy was adopted, in part, because of customer service concerns, *see* Konrad Depo. at 40:8-13, and a pharmacist is required by law to operate the pharmacy, *see* Konrad Decl. ¶ 6, these circumstances do not alter the fact that plaintiffs have the choice to take unpaid leave when they lack accrued paid leave.  Accordingly, that Rite Aid has a policy of offering unpaid leave, limited to full-day increments, does not turn an employee's decision to

_____

[15] Konrad's deposition testimony suggests that a pharmacist's unapproved absence could subject the pharmacist to some form of disciplinary action.  *See* Konrad Depo. at 23:25-24:1 ("[T]hey don't get paid for those hours, however, they are not terminated . . . ."); *id.* at 35:9-11 ("If they are unable to come in, the [Pharmacy District Manager] has to handle opening the store.  Then we deal with it as a performance issue . . . .").  But, plaintiffs do not make any argument regarding disciplinary actions, and the FLSA salary basis test does not disqualify employees from exempt status on such grounds.  *See, e.g.*, *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir. 2000) (holding that policy requiring employees to make up missed hours later in the week did not violate FLSA salary basis test).

take advantage of such a policy into one "occasioned by the employer or by the operating requirements of the business," under 29 C.F.R. § 541.602(a).

   2.   *DOL regulations permit deductions from pay for full-day absences.*[16]

A deduction for a full-day absence is the sole deduction permitted under the DOL regulations, pursuant to 29 C.F.R. § 541.602(b)(1). In my view, Rite Aid's unpaid leave policy is expressly contemplated as a permissible deduction. Indeed, acceptance of plaintiffs' argument would effectively discourage employers from offering *any* unpaid leave policy to salaried professionals, which would be an illogical result under the FLSA.

The DOL regulations specify that a deduction made for partial-day absences will bar the white collar exemption for salaried employees. In contrast, deductions for full-day absences are expressly permitted. 29 C.F.R. § 541.602(b)(1) states: "[I]f an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence." When an employee is absent for a full day, a deduction from the employee's salary may be made on an hourly, daily, or other applicable basis. *See* 29 C.F.R. § 541.602(c).

Accordingly, without jeopardizing exempt status, an employee may be docked for a full-day absence when the employee has no remaining vacation or personal time left to allocate towards the time missed from work. *See, e.g.*, DOL Wage & Hour Opinion Letter, 1992 WL 845094, at *1-2 (Apr. 14, 1992) ("If an exempt employee with no accrued [paid leave] or [disability leave] hours is absent an entire day or more, the employee's salary will be reduced

---

   [16] As noted, *supra*, the regulations are entitled to considerable weight.

accordingly.  If an exempt employee with no accrued [paid leave] or [disability leave] hours is absent for less than a day, the employee still receives his or her full weekly salary.  Personal time off for other than illness or injury is handled in a similar fashion. . . .   It is our opinion that your client's exempt employees are being paid on a 'salary basis' within the meaning of the Regulations."); *Zelenika v. Commonw. Edison Co.*, 2012 WL 3005375, at *10-11 (N.D. Ill. July 23, 2012) ("In support of their argument that they were not paid on a salaried basis, Plaintiffs point to evidence in the record that ComEd had a policy of docking pay when a Dispatcher missed a full day and had no vacation, sick time, or personal time remaining.  But the first two exceptions in 29 C.F.R. § 541.602(b) make clear that full-day deductions are permissible under such circumstances.").

On the other hand, it would violate the FLSA's white collar exemption if employees without any available paid leave were docked on a wages-per-hour basis for absences of less than a full day.  *See* 29 C.F. R. § 541.603(b) ("[I]f a manager at a company facility routinely docks the pay of engineers at that facility for partial-day personal absences, then all engineers at that facility whose pay could have been improperly docked by the manager would lose the exemption."); *see*, *e.g.*, *Hawks v. City of Newport News, Va.*, 707 F. Supp. 212, 214 (E.D. Va. 1988) (finding inconsistent with exempt status an employer's policy docking salaries of employees without remaining sick leave or vacation time for working less than a scheduled 24-hour shift); DOL Wage & Hour Opinion Letter (Oct. 24, 2005) ("[W]here the employee's absence is for less than a full day, payment of an amount equal to the employee's guaranteed salary must be made even if the employee has no accrued vacation time or other leave benefits.

However, . . . a deduction from an employee's leave bank or salary may be made for absences of one or more full days for personal reasons . . . .").

If the plain language of the regulation permits policies offering unpaid leave in full-day increments, it is difficult to understand how an employer can violate the salary basis test by doing precisely what the DOL regulations expressly authorize.  A deduction for absences of one or more full days is the functional equivalent of a full-day unpaid leave policy.  *See, e.g.*, *In re Wal-mart Stores, Inc.*, 395 F.3d at 1181 (implicitly approving unpaid leave policy for exempt pharmacists where "the employee was to report having worked the minimum base-salary hours even if the employee had not done so, except when the employee had taken a full day off without pay," noting that "the [DOL salary basis] regulation permits deductions for voluntary days off") (citing then-current 29 C.F.R. § 541.118(a)(1)-(2) (2003)).

This interpretation of the regulations comports with decisions finding, albeit implicitly, that unpaid leave offered in full-day increments does not deprive a salaried employee of the white collar exemption.[17]  For example, in *Bell v. Callaway Partners, LLC*, 394 F. App'x 632, 633-34 (11th Cir. 2010) (per curiam), the Eleventh Circuit rejected the argument that an employee was not exempt based on salary deductions "for every full day a Plaintiff took off from work for personal reasons during the normal workweek without substituting Paid Time Off," because "a Plaintiff could work fewer than eight hours during any given workday without any reduction in his or her weekly salary."  *See also Bell v. Callaway Partners, LLC*, No. 1:06-CV-1993-CC, 2010 WL 6231196, at *10-12 (N.D. Ga. Feb. 5, 2012) (discussing challenged policy, as affirmed by Eleventh Circuit).  Similarly, in *Zelenika v. Commonwealth Edison Co.*, 2012 WL

_____

[17]  To my knowledge, these are the only decisions in which similar policies were addressed.

3005375, at *10-11 (N.D. Ill. July 23, 2012), employees argued that they were not paid on a salary basis because the employer "had a policy of docking pay when a[n] [employee] missed a full day and had no vacation, sick time, or personal time remaining." The court rejected the argument, because a deduction for a full-day absence is expressly contemplated under DOL regulations. *See id.*

In *Wolfslayer v. Ikon Office Solutions*, Civ. No. 03-6709, 2004 WL 2536833 (E.D. Pa. Nov. 8, 2004), the employer's policy provided that "[e]xempt employees who are ineligible for and/or who have exhausted all available sick and vacation time may have their pay docked in full-day increments when they are absent for illness or personal reasons." *Id.* at *8. The employer allowed employees to use sick leave and vacation time in half days, however. *See id.* at *1. In light of the full-day pay docking policy, the court addressed whether "reductions in fringe benefits in less than full day increments means that salary is effectively being reduced in less than full day increments." *Id.* at *10. The employees argued that the policy was inconsistent with their exempt status because, under the policy, "reductions of leave time in half-day increments possibly followed by reductions in salary in full day increments if the employee has run out of leave time violates the FLSA regulations." *Id.* at *8. Finding that deductions in leave time in less than full-day increments did not constitute a deduction in a salary "amount" under the FLSA, the court held that the policy did not preclude exempt status for those employees. *Id.* at *9-10. Notably, the court was not concerned with the possibility of subsequent full-day salary deductions for personal absences.

Plaintiffs look for support to several cases that, in my view, do not stand for the proposition that unpaid leave, offered only in full-day increments, terminates the employees'

exempt status.  In *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir. 2000), the Fifth Circuit held that a policy requiring employees to make up hours missed earlier in the week for personal reasons did not violate the salary basis regulations, and that a policy permitting salary deductions for absences of eight or more consecutive hours over two days was likewise permissible.  *See id.* at 264-66.  In *Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 534-35 (7th Cir. 1999), the Seventh Circuit merely affirmed the district court's finding that no genuine issue of material fact existed regarding an employee's salaried status, because the only conflict was between his self-serving affidavit and his deposition testimony.  And, in that case, the employee's deposition testimony, that "he had no expectations that his pay would be docked for absences if he had no vacation time remaining for the year and took less than a full day of vacation," did not indicate any improper deductions.  *Id.* at 535.

Plaintiffs also cite to a DOL Opinion Letter pertaining to the FMLA, in which the DOL advised that an employee seeking part of a day for leave under the FMLA cannot be charged with a mandatory full day absence, because it would constitute a deduction for absence occasioned by the employer, in violation of then-current 29 C.F.R. § 541.118(a)(1).  *See* DOL FMLA Opinion Letter, 1997 WL 1039254 (July 3, 1997).  Because FMLA has its own statutory scheme, this letter is not particularly probative of the issues in this case.  Moreover, in light of the cursory nature of the letter, in the absence of any explanation to support this position, and in light of the attenuated relationship between the context of the Opinion Letter and this case, this isolated support for plaintiffs' position is not persuasive.

Under plaintiffs' view, a full-day unpaid leave policy violates the FLSA because it is "occasioned by the employer or operating requirements of the business," 29 C.F.R. § 541.602(a),

except where an employee subjectively desires *exactly* one full day of unpaid leave.  Acceptance of plaintiffs' characterization of the FLSA would discourage employers from offering any unpaid leave to exempt salaried professionals, a result that reaches beyond the scope of the regulatory scheme.   Under 29 C.F.R. § 541.602(b)(1), salary deductions are permitted for exempt employees for full-day absences only.  And, the DOL has specifically rejected the request that "partial day deductions be permitted for any leave requested by an employee, including for sickness or rehabilitation or for disciplinary suspensions."[18]  Final Rule, 69 Fed. Reg. 22122-01, 2004 WL 865626, at *22178; *see id.* ("We believe that partial day deductions generally are inconsistent with the salary basis requirement, and should continue to be permitted only for infractions of safety rules of major significance, for leave under the Family and Medical Leave Act, or in the first and last weeks of employment.").  Thus, an employer attempting to navigate the FLSA would be confronted, on one side, with the Scylla of 29 C.F.R. § 541.602(a), precluding full-day unpaid leave policies because, according to plaintiffs, an absence elected by an employee pursuant to such a policy would be occasioned by the employer.  And, on the other side would sit the Charybdis of 29 C.F.R. § 541.602(b), prohibiting the alternative of a part-day unpaid leave policy.  As a result, employers will be unable to offer any unpaid leave to exempt professionals without running afoul of the FLSA.

In effect, plaintiffs read the FLSA to require an employer to permit any absence of less than a full day, without experiencing any deduction, regardless of whether the employee has

---

[18] The comments at issue had been submitted by the National Association of Chain Drug Stores, the U.S. Chamber of Commerce, the HR Policy Association, and the National Retail Federation, suggesting that Rite Aid and similarly situated employers have attempted to establish a part-time unpaid leave policy, evidently to no avail.  *See* Final Rule, 69 Fed. Reg. 22122-01, 2004 WL 865626, at *22178.

accrued leave.   An employer would be obligated to allow unlimited paid leave to its exempt salaried professionals.   But, as Rite Aid points out, the FLSA does not govern an employer's decision to offer leave policies, paid or unpaid.   *See* DOL Wage & Hour Opinion Letter, 2005 WL 3308612 (Oct. 24, 2005) ("[E]mployers are not required under the FLSA to provide any vacation time to employees."); DOL Wage & Hour Opinion Letter, 1994 WL 1004823 (May 6, 1994) ("There are no provisions in the FLSA to require an employer to pay an employee sick leave *or any other fringe benefits*.   Such matters are for private agreement between the employer and the employee . . . .") (Emphasis added).   And, this would be an unworkable policy for pharmacies legally obligated to operate only in the presence of a licensed pharmacist.   Thus, the obvious repercussions of plaintiffs' arguments fall well beyond the language and purpose of the FLSA and would work a sea change in employment practices, violating a fundamental precept of statutory interpretation: "statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.*, 401 F.3d 274, 280 (4th Cir. 2005).

### Conclusion

In light of the regulatory language, DOL opinion letters, and case law, I do not agree with plaintiffs that the FLSA prohibits an employer from offering unpaid leave to exempt employees only in full-day increments.   Therefore, I conclude that Rite Aid did not make improper salary deductions for absences based on unpaid leave.   Accordingly, plaintiffs have failed to establish that they were non-exempt under the FLSA.   It follows that they were not entitled to compensatory overtime pay under either the FLSA or MWHA.

For the foregoing reasons, the Court will grant summary judgment in favor of Rite Aid.

A separate Order, consistent with this Memorandum Opinion, follows.


Date: December 13, 2012                        _____/s/_____
                                               Ellen Lipton Hollander
                                               United States District Judge